# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BAXTER INTERNATIONAL, INC., ) | |
| ) | Case No. 17 C 7576 |
| Plaintiff, ) | |
| ) | District Judge Lefkow |
| ) | |
| v. ) | Magistrate Judge Schenkier |
| ) | |
| BECTON, DICKINSON AND COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

In this patent infringement case, plaintiff Baxter International, Inc. ("Baxter") has filed a motion to compel defendant Becton, Dickinson and Company ("BD") to (1) provide a more detailed privilege log that identifies the specific subject matter of documents withheld or redacted in response to Baxter's first set of document requests; (2) produce documents (and reveal portions of documents) that have been withheld or redacted based on an assertion of common interest privilege; and (3) designate and produce a witness to testify about Rule 30(b)(6) topics concerning BD's patent/product clearance practices and policies (doc. # 132: Pl.'s Revised 3d Mot. to Compel, at 1).[1] The parties' dispute involves the discovery of information that may be relevant to a charge of willful infringement, which Baxter was required to add to its complaint by July 17, 2019 (doc. # 99). The motion has been fully briefed. Our ruling on the motion is set forth below.

---

[1] The parties have filed many documents under seal in connection with this motion: Baxter filed its motion to compel, its reply, and certain exhibits under seal (docs. ## 124, 124-1 to 124-9, 145, and 146), and BD filed exhibit 2 to its opposition under seal (doc. # 136). Baxter also filed redacted or otherwise public versions of many of the sealed documents it filed (docs. ## 126, 129-1 to 129-9, 132, 143). In this decision, we refer to the publicly-available versions of the parties' filings when possible. If we must refer to a sealed document, though, we do so without revealing any information that could be reasonably deemed confidential.

# I.

We begin with Baxter's request for more detail from BD's privilege log. In February 2018, Baxter served its first set of document requests, which includes requests seeking the production of "[d]ocuments sufficient to determine [BD's] first knowledge or awareness of any of the Patents-in-Suit" and "documents concerning [BD's] knowledge or awareness of any of the Patents-in-Suit" (Pl.'s Revised 3d Mot. to Compel, at 2).[2] Baxter contends that this set of document requests seeks documents "relating to BD's knowledge of the Patents-in-Suit, patent/product clearance policies, and any patent searches or opinions" (*Id.* at 2-3).

On November 7, 2018, BD served a privilege log to Baxter. Baxter asserted that BD's log was deficient in several respects, and the parties discussed the issue at a November 14, 2018 motion hearing before the district judge (doc. # 129-7: Pl.'s Ex. G, 11/14/18 Hr'g Tr., at 2:3-3:19, 4:8-5:21, 6:24-7:18). The district judge ordered BD to provide a supplemental privilege log and complete its production of discovery relating to willful infringement by December 7, 2018 (*Id.* at 8:1-5; docs. ## 89, 99). Prior to the December 7th deadline, however, the district judge stayed the case pending the outcome of three *inter partes* review ("IPR") petitions filed before the Patent Trial and Appeal Board (doc. # 94). Due to the stay, BD did not provide a supplemental privilege log or complete its willful infringement discovery production by December 7, 2018. On March 28, 2019—after all three IPR petitions had been denied—the district judge lifted the stay (docs. ## 97, 98), and in an April 9, 2019 order, she directed BD to "produce[] discovery and privilege log agreed to and Ordered by the Court in Docket No. 89 and at 11/14/2018 hearing" by April 26, 2019 (doc. # 99).

---

[2] Neither party has provided us with a copy of Baxter's first set of document requests, so we rely upon Baxter's representation of their content, which BD does not dispute.

2

On April 26, 2019, BD served a supplemental privilege and redaction log (doc. # 129-2: Pl.'s Ex. B). The log contains 407 entries: 155 entries for withheld documents and 252 entries for redactions. BD asserted attorney-client privilege for every entry except two; for these two entries, which are "[l]etter[s] re Monterey IP Diligence" (Privilege Log Entries Nos. 29 and 30), BD asserted no attorney-client, work product, or other privilege. BD also asserted the common interest privilege for 265 entries, and work product for two entries.

Baxter was again unsatisfied with BD's privilege log, and on May 2, 2019, Baxter asked BD for supplementation "to disclose whether any [log] entries reference or relate to the Patents-in-Suit, including the applications on which they are based" (doc. # 129-3: Pl.'s Ex. C).[3] In response, BD asserted that Baxter's request appeared to "ask[] for the content of privileged communications" (doc. # 129-5: Pl.'s Ex. E). On June 6, 2019, the parties met and conferred regarding the privilege log dispute raised in Baxter's May 2nd email but were unable to resolve the dispute.

Baxter contends that BD's April 26th supplemental privilege and redaction log uses generic, boilerplate language that "fails to provide any meaningful description of the documents [BD] has redacted and withheld from production" (Pl.'s Revised 3d Mot. to Compel, at 5, 11).[4] This, according to Baxter, precludes it from evaluating BD's assertions of privilege (*Id.* at 5, 11-12). Baxter asks that BD be required to supplement its privilege log "to provide a detailed

---

[3] Baxter also "request[ed] that BD supplement the 'Cast of Characters for Privilege Log' included with its Supplemental Privilege and Redaction Log to identify the roles of the individuals identified and who they represented, in the case of outside counsel" (Pl.'s Ex. C). This request is not at issue here.

[4] On June 21, 2019, BD produced a second supplemental privilege and redaction log, which Baxter contends still fails to address the deficiencies identified in its motion (Pl.'s Revised 3d Mot. to Compel, at 5 n.3; doc. # 129-8: Pl.'s Ex. H). We only address BD's April 26th supplemental privilege and redaction log, and we expect the parties to follow the findings and reasoning contained in this decision with respect to any subsequent privilege logs.

description of each withheld document and redaction, *including specifically identifying whether the listed documents and redactions reference or relate to the Patents-in-Suit*" (*Id.* at 12 (emphasis in original)).

As an initial matter, we decline to order BD to provide a more detailed description for *every* one of its 407 privilege log entries. As we explain in our "Privilege Logs" case procedure entry (found on the court's home webpage), "the meet and confer requirements of Local Rule 37.2 apply to privilege disputes, just as they do to other discovery disputes." https://www.ilnd.uscourts.gov/judge-info.aspx?EBclBxz8ceU= (last visited July 22, 2019). Here, there is no indication that the parties discussed anything about BD's log entry descriptions at the parties' June 6th meet and confer other than BD's failure to identify the patents that are referred to in the log entries. Indeed, the May 2nd email from Baxter that touched off the relevant meet and confer process only sought, in pertinent part, supplementation "to disclose whether any entries reference or relate to the Patents-in-Suit, including the applications on which they are based" (Pl.'s Ex. C). It did not request that BD supplement its privilege log to provide other, additional information for every log entry, or even for the exemplary log entry descriptions identified in Baxter's motion (*Id.*). And by failing to respond to or otherwise challenge BD's contention that the parties have not met and conferred about issues regarding BD's log entry descriptions beyond the identification of the patents at issue, Baxter implicitly concedes that these issues are not properly before us at this time (*see* doc. # 135: Def.'s Opp'n to Pl.'s Revised 3d Mot. to Compel, at 6; doc. # 143: Pl.'s Reply, at 2-5).[5]

---

[5] Although Baxter asserts in its opening motion that the parties met and conferred sometime in November 2018 regarding "inadequate subject matter descriptions" in BD's original privilege log (Pl.'s Revised 3d Mot. to Compel, at 3), Baxter does not argue in its reply that this meet and confer, which took place more than six months before the current motion, addressed the relief it now seeks concerning the adequacy of BD's privilege log descriptions independent of BD's failure to identify the patents at issue for each entry.

Thus, in this decision, we do not express a view regarding the adequacy of BD's privilege log descriptions other than to determine if BD must identify, by patent number, the patents-in-suit referred to by the withheld documents and redactions listed on its April 26th supplemental privilege and redaction log.[6] On this point, BD contends that Baxter's request for the disclosure of any patents-in-suit referred to by the logged documents and redactions is improper because (1) it asks for the substance of documents or communications protected by the attorney-client privilege;[7] (2) it seeks information that will not help Baxter evaluate BD's claims of privilege; and (3) it is contrary to the position Baxter has taken with its own privilege log (Def.'s Opp'n to Pl.'s Revised 3d Mot. to Compel, at 3-6). We find BD's arguments unpersuasive.

*First*, BD has not shown that the identity of a patent discussed or analyzed in an otherwise-privileged document is itself information protected by the attorney-client privilege. *See United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) ("The party seeking to invoke the [attorney-client] privilege bears the burden of proving all of its essential elements").[8] To the contrary, BD (tacitly) acknowledges the non-privileged nature of this information by arguing that "the number

---

[6] We likewise decline to address whether BD has waived the privilege as to those log entries where it has identified an author or recipient as being "inferred." Baxter did not raise this issue until its reply (Pl.'s Reply, at 2 n.1). *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) (noting that a "district court is entitled to find that an argument raised for the first time in a reply brief is forfeited"). Moreover, there is no indication that the parties met and conferred on this issue.

[7] Because BD's argument addresses only the attorney-client privilege (and not work product), we do the same (Def.'s Opp'n to Pl.'s Revised 3d Mot. to Compel, at 3-4). *See Woodard v. Victory Records, Inc.*, No. 14 CV 1887, 2014 WL 2118799, at *8 (N.D. Ill. May 21, 2014) ("Attorney-client and work-product protections are two independent privileges which require separate analyses and reflect different policies").

[8] In patent cases, Federal Circuit law applies for those privilege disputes that relate to an issue of substantive patent law; otherwise, Seventh Circuit law applies. *Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1363 n.6 (Fed. Cir. 2017); *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803-04 (Fed. Cir. 2000). Although the documents at issue refer to patents, the disputes here do not seem to implicate substantive patent law. *Cf. Fort James Corp. v. Solo Cup Co.*, 425 F.3d 1340, 1343-44, 1346, 1350-51 (Fed. Cir. 2005) (applying Seventh Circuit law to questions about waiver of the attorney-client privilege involving documents relating to legal opinions about patent validity and invention disclosure statements). In any event, neither party cites to or relies upon Federal Circuit law. Thus, we apply Seventh Circuit law to the privilege issues raised in Baxter's motion.

of the patent at issue (if any) in a log entry does not determine whether the document is privileged" (Def.'s Opp'n to Pl.'s Revised 3d Mot. to Compel, at 4). In fact, BD goes even further by contending that whether a communication is about a particular patent "is *completely irrelevant* to whether the communication is privileged" (*Id.* at 5 (emphasis added)). BD cannot have it both ways: the identification of a patent cannot be information that is privileged and, at the same time, be information that is "completely irrelevant" to the question of privilege.

*Square D Co. v. E.I. Electronics, Inc.*, 264 F.R.D. 385 (N.D. Ill. 2009), cited by BD, does not convince us otherwise. In *Square D*, the court found that questions asked at a deposition—some of which asked the witness to identify the patents for which the defendant had obtained legal opinions—were "objectionable because they attempt[ed] to ascertain, via the back door," the substance of those opinions by linking the product changes the defendant may have made to the opinions at issue. *Id.* at 392-93. Here, though, identifying a particular patent in a log entry does not disclose the substance of the *legal advice* contained in the logged document or redaction any more than does describing the document or redaction as concerning "Patent Advice," "Patent Prosecution," "Patent Strategy," or "legal advice re patent analysis" -- which BD has already done (*See, e.g.*, Pl.'s Ex. B, at 2, 13). We agree with Baxter (Pl.'s Reply, at 3) that this information merely discloses the subject matter of the document, and not the substance of it. Disclosing the fact that a document or redaction concerns "patent no. X,XXX,XXX" does not, for example, disclose anything about what (if anything) the author of that document opined concerning infringement or validity. Indeed, such a disclosure does not even identify the patent-related issue to which any communicated legal advice or information relates.

Our conclusion is reinforced by the fact that the circumstances surrounding an accused infringer's discovery of a patent "are not in themselves protected by the attorney-client

privilege[.]" *Vasudevan Software, Inc. v. IBM Corp.*, No. C 09-05897 RS (PSG), 2011 WL 1599646, at *2 (N.D. Cal. Apr. 27, 2011) (internal quotations omitted). This is true even if an accused infringer first becomes aware of a patent through its attorney; the mere existence of a patent is a fact, and facts do "not become privileged just because they are communicated to or by a lawyer." *See Intervet, Inc. v. Merial Ltd.*, 256 F.R.D. 229, 232-33 (D.D.C. 2009) (requiring the accused infringer to identify the person who first discovered the patent-in-suit and to "describe the circumstances under which the discovery was made, including, if applicable, that the patent was discovered by an attorney"); *see also Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994) ("Facts are discoverable[.] . . . A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer").

The information sought by Baxter may shed light on the circumstances surrounding when BD first became aware of the patents-in-suit. For instance, if BD sent or received an email referring to a patent-in-suit on a particular date, that would evidence BD's awareness of that patent as of that date. This is factual, non-privileged information that is relevant to establishing a claim for willful infringement, which requires "[k]nowledge of the patent alleged to be willfully infringed[.]" *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016) (in discussing willful infringement, noting that "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct"). And, recall that the assertion of privilege here seeks to shield from production documents responsive to Baxter's request for "documents concerning [BD's] knowledge or awareness of any of the Patents-in-Suit." That information may confirm or contradict BD's interrogatory responses about when and how it became aware of the patents-in-

suit (*see* doc. # 144-4: Pl.'s Reply Ex. 4, at 4). The fact that BD has disclosed this information in its interrogatory responses further shows the factual, non-privileged nature of the information sought by Baxter's request.

Ultimately, the attorney-client privilege is construed narrowly, and it only attaches to confidential communications that constitute legal advice or that "tend directly or indirectly to reveal the substance of a client confidence." *Evans*, 113 F.3d at 1461; *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990). BD has not shown that disclosing the identity of a patent referred to by a withheld or redacted document would impermissibly disclose legal advice or otherwise reveal client confidences. For these reasons, Baxter's request does not seek the disclosure of attorney-client privileged information.

*Second*, we agree with BD that identifying the specific patent referred to by a document does not help determine whether that document contains attorney-client privileged information. A privilege log entry describing a document as "Memorandum re Patent Advice for patent no. X,XXX,XXX," for instance, provides no more aid in assessing a party's assertion of attorney-client privilege than "Memorandum re Patent Advice"—the only difference is that we know the particular patent to which the document refers. As such, Baxter's request for relief does not fall neatly within Federal Rule of Civil Procedure 26(b)(5)(A), which requires a party to describe withheld documents "in a manner that . . . will enable other parties to assess" privilege claims.[9]

---

[9] That being said, identifying the specific patent at issue provides information that may help the opposing party determine whether the subject matter of the withheld document is sufficiently relevant to warrant challenging the adequacy of a questionable entry in the first place. Identifying the specific patent at issue could also help assess claims of work product; if a document relates to a patent for which there was no anticipated litigation, it might not qualify as work product. *See Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 767-68 (7th Cir. 2006) ("The work-product doctrine shields materials that are prepared in anticipation of litigation from the opposing party"). But we focus on the attorney-client privilege, as the parties have, and because BD has only asserted work product for two out of 400+ privilege log entries.

Nonetheless, the fact that BD has chosen to log documents shows that they are relevant and responsive to Baxter's document requests. Had BD not withheld or redacted these documents on privilege grounds, it would have produced them by now, as it does not dispute that they include documents responsive to document requests served in February 2018, over a year-and-a-half ago, as well as documents that were to be produced by April 26, 2019 (*see* doc. # 99). Yet because BD *did* withhold and redact these documents, Baxter still does not have information that is potentially relevant to a claim for willful infringement, even though the deadline for adding a willful infringement claim has now come and gone. BD should not be permitted to continue to withhold non-privileged information that is clearly at issue and potentially relevant to Baxter's claims in this case. In these circumstances, it is appropriate for BD to provide the requested information even if it does not, strictly speaking, help Baxter to assess BD's claims of attorney-client privilege as set forth in Rule 26(b)(5)(A). Put another way, BD should not be allowed to use the assertion of privilege as a means of shielding relevant, non-privileged information from disclosure.

*Third*, the fact that Baxter has not identified patent numbers in certain of its own privilege log entries does not justify BD's failure to do so. *Cf. Gropper v. David Ellis Real Estate, L.P.*, No. 13 Civ. 2068 (ALC) (JCF), 2014 WL 518234, at *3 (S.D.N.Y. Feb. 10, 2014) ("Discovery is not equity: one party's noncompliance with discovery requirements does not excuse the other's failure to comply"). BD's privilege log, not Baxter's, is at issue on this motion. Of course, BD is free to ask Baxter to supplement its privilege log to provide the same information that Baxter now asks BD to provide.

In sum, the identity of the patent referred to or analyzed in a withheld or redacted document is not privileged information, and Baxter is entitled to know which entries on BD's privilege log refer to one or more of the patents-in-suit. For any withheld or redacted document that refers to

9

one or more of the patents-in-suit, BD is ordered to supplement its latest privilege and redaction log to identify the patent(s) by number in the corresponding privilege log entry.

## II.

We next address Baxter's arguments regarding BD's assertion of the common interest privilege. Most of the documents withheld or redacted by BD based on this privilege (254 out of 265) were either sent to or from Carmel Pharma, a company that was acquired by BD ("the Carmel documents") (*See* Pl.'s Ex. B; doc. # 144-1: Pl.'s Reply Ex. 1, 6/27/19 Hr'g Tr., at 6:13-23). In its motion to compel, Baxter focused only on BD's assertion of the common interest privilege with respect to the Carmel documents; Baxter did not substantively argue that BD improperly withheld or redacted any *other* documents based on the common interest privilege (Pl.'s Revised 3d Mot. to Compel, at 6-7, 12; *see also* Pl.'s Reply, at 5 (arguing that the common interest privilege does not apply to "documents to the extent they were Carmel Pharma privileged materials disclosed to BD in the course of pre-acquisition due diligence")). At the June 27, 2019 motion hearing, which was held after Baxter filed its motion, BD's counsel withdrew its reliance on the common interest privilege as to the Carmel documents (Pl.'s Reply Ex. 1, at 10:1-11, 12:21-13:1). Accordingly, we considered the common interest privilege issue resolved: "Defendant withdraws [its] claim of common interest privilege as to the Carmel documents, resolving that aspect of the revised third motion to compel discovery" (doc. # 134).

Baxter, however, claims that this issue is not resolved (Pl.'s Reply, at 5-7). Baxter contends that there is evidence that one or more documents were provided by Carmel Pharma to BD, at BD's request, during the pre-acquisition due diligence phase, and that BD will not confirm whether "these documents exist, whether they are privileged, or even whether they are on" BD's privilege log (*Id.* at 6; doc. # 145: Pl.'s Sealed Reply, at 6). Baxter also contends that BD has not provided

an updated privilege log reflecting its withdrawal of the common interest privilege and that BD's counsel indicated, during a recent meet and confer, that BD would not be withdrawing the common interest privilege for at least one document (Pl.'s Reply, at 7). We address each contention in turn.

*First*, whether the Carmel documents specifically referred to by Baxter in its reply exist, have been produced, or are identified on BD's privilege log is not before us. The issue raised by Baxter in its motion to compel was BD's assertion of the common interest privilege over the Carmel documents. BD agreed to withdraw that assertion with respect to the Carmel documents, thereby resolving the issue.[10]

*Second*, as noted above, we are ordering BD to supplement its latest privilege log to identify, in those log entries that refer to one or more of the patents-in-suit, the specific patent(s). BD's supplementation must also reflect its withdrawal of the common interest privilege as to the Carmel documents. BD should also ensure that the remaining privileges asserted for the Carmel documents (attorney-client privilege and/or work product) are applicable; if not, BD should immediately produce any such document. After BD supplements its privilege log and produces any additional documents, the parties should meet and confer to the extent Baxter believes that relevant, responsive, and non-privileged Carmel documents still have not been produced by BD.

*Third*, although Baxter states that BD's counsel recently represented that BD would not be withdrawing the common interest privilege with respect to one or more documents, Baxter does not cite to any email or other documentation confirming that this representation was made. And given BD's disagreement with other statements Baxter has made regarding the attorneys' dealings

---

[10] Even though BD has withdrawn its common interest privilege assertion for the Carmel documents, it is inappropriate for us to order the production of these documents at this time, as BD has maintained its assertion of attorney-client privilege and/or work product for these documents.

(*see* Def.'s Opp'n to Pl.'s Revised 3d Mot. to Compel, at 5 n.1), BD may not agree with this statement either. In any event, we do not know whether the document (we assume a single document for argument's sake) is a Carmel document. If it is, we remind BD that its counsel agreed in open court to withdraw its assertion of the common interest privilege for such documents. If the document is not a Carmel document, however, BD is entitled to maintain its common interest privilege assertion so long as it has determined in good faith that the privilege still applies, subject to any challenge to that assertion that may be brought by Baxter.

### III.

The last issue raised by Baxter's motion to compel is BD's refusal to designate a witness for certain Rule 30(b)(6) topics. On May 24, 2019, Baxter served a Second Amended Rule 30(b)(6) notice of deposition. Topic 6 of this Rule 30(b)(6) notice addresses "BD's patent clearance policies and procedures generally and as applied to the Accused Products"; Topic 7 addresses "[a]ny efforts by BD to monitor or keep apprised of patents relevant to closed system drug transfer devices and/or the Accused Products"; and Topic 8 addresses "[a]ny efforts by BD to monitor or keep apprised of patents assigned to its competitors, including but not limited to Baxter" (doc. # 129-6: Pl.'s Ex. F, at 3-4). BD served objections to the Rule 30(b)(6) notice, in which it refused to designate a witness to testify about these topics (*Id.*). On June 13, 2019, the parties met and conferred regarding BD's refusal to designate a Rule 30(b)(6) witness to testify about Topics 6, 7, and 8, but the parties were unable to resolve the dispute.

Baxter contends that Rule 30(b)(6) Topics 6, 7, and 8 are relevant to the issue of willful infringement (Pl.'s Revised 3d Mot. to Compel, at 13). BD does not dispute the relevance of Topics 6, 7, and 8. Nor does BD now contend, as it did in its objections to Baxter's Rule 30(b)(6) notice, that the topics are overbroad (Pl.'s Ex. F, at 3-4). And although BD contends that Baxter has

already obtained information covered by Topics 6, 7, and 8—such as a copy of BD's written patent policy and deposition testimony from BD's former chief intellectual property counsel—BD does not explain why Baxter should be precluded from attempting to obtain similar or related information through a Rule 30(b)(6) deposition. This is just as well, as we would have rejected such an argument. A party "should not be prevented from questioning a live witness in a deposition setting just because the topics proposed are similar" to other discovery served—to do so "would essentially limit a [party] to the first form of discovery served[.]" *New Jersey v. Sprint Corp.*, No. 03-2071-JWL, 2010 WL 610671, at *2 (D. Kan. Feb. 19, 2010). Here, a Rule 30(b)(6) "witness may still be useful to testify" as to BD's written patent policy, as well as about any related information that is not apparent from the document itself. *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010). What is more, BD's former chief intellectual property counsel was not offered as a Rule 30(b)(6) witness to give testimony on BD's behalf. Baxter is entitled to obtain BD's corporate testimony about relevant topics, even if it has already obtained similar or related testimony from a third-party individual. *See id.* ("[C]ourts have allowed 30(b)(6) depositions in order to obtain testimony binding on the corporation even though that testimony was likely to essentially duplicate information which had already been stated in an individual deposition"); *New Jersey*, 2010 WL 610671, at *2 ("Even if the substance of the information ultimately provided mirrors that of the testimony given by Sprint's former directors and employees, plaintiff still is entitled to tie down the definitive positions of Sprint itself, rather than that of the individuals who work for Sprint").

Thus, the crux of BD's refusal to produce a witness is its contention that Topics 6, 7, and 8 "invade BD's privileged communications and work product" by seeking testimony that "relates entirely to the legal analysis and opinions of BD's counsel" (Def.'s Opp'n to Pl.'s Revised 3d Mot.

to Compel, at 1, 7). BD's argument, however, assumes that every question within the scope of Topics 6, 7, and 8 that would be asked by Baxter would seek privileged information. This is speculation: the topics at issue are not drafted in such a way that questions within their scope would *inevitably* seek privileged information. *See Cotton v. Costco Wholesale Corp.*, No. 12-2731-JWL, 2013 WL 3819975, at *4 (D. Kan. July 24, 2013) (where deposition topics did not, "on their face, call for testimony that would be protected from disclosure," it was "speculative to prohibit inquiry into this subject matter on the basis that [the plaintiff's] counsel could potentially ask a question regarding privileged information"); *see also SEC v. Merkin*, 283 F.R.D. 689, 695 (S.D. Fla. 2012) (noting, in the context of Rule 30(b)(6) depositions of government agencies, that "several district courts . . . have rejected sweeping arguments that a deposition could not go forward because of the *possibility* that some questions might seek protected information" (emphasis in original)). Although Baxter's attorneys certainly could ask questions within the bounds of Topics 6, 7, and 8 that seek privileged information, this is true for many Rule 30(b)(6) topics that could be propounded by a party.

Moreover, Baxter has represented that it "is not seeking to discover the substance of privileged communications" and that it "has no intention of asking BD's designated witness about the substance of any opinions of counsel" (Pl.'s Revised 3d Mot. to Compel, at 13 n.4; Pl.'s Reply, at 8-10). Baxter asserts that it will instead seek to obtain "testimony regarding the existence of [BD's patent clearance] policies, whether they were followed by BD, who was responsible for implementing them, when compliance with the policies occurred, and how that compliance was effectuated" (Pl.'s Reply, at 8). These areas of inquiry do not strike us as categorically impermissible attempts to seek privileged information. In any event, we cannot see into the hypothetical future to determine what questions Baxter's counsel will ask of BD's Rule 30(b)(6)

witnesses and whether BD will claim that these questions intrude upon its privileges. *See EEOC v. LifeCare Mgmt. Servs., LLC*, No. 02:08-cv-1358, 2009 WL 772834, at *2 (W.D. Pa. Mar. 17, 2009) ("[U]nless and until Defendants actually ask a question at the deposition that intrudes upon the deliberative process privilege or any other alleged applicable privilege, the Court finds that the EEOC's [privilege] objections are premature").

BD's wholesale refusal to produce a witness to testify about relevant Rule 30(b)(6) topics is not the appropriate way to protect its privileged information. *See Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, No. 3:13-CV-1047-CRS, 2016 WL 9460471, at *11 (W.D. Ky. June 29, 2016) (finding that the plaintiff could "not preemptively, and in blanket fashion, invoke . . . privileges to cut off even the possibility of a Rule 30(b)(6) deposition as to" particular topics); *Merkin*, 283 F.R.D. at 698 (explaining that "[l]itigants usually cannot prohibit a 30(b)(6) deposition by arguing in advance that each and every question would trigger the disclosure of attorney-client and work production information"); *Bryant v. Mattel, Inc.*, No. CV 04-09049 SGL(RNBx), 2007 WL 5430885, at *3 (C.D. Cal. July 2, 2007) (holding that the defendant "could not make a blanket [privilege] objection and justify its refusal to produce a Rule 30(b)(6) designee on [a Rule 30(b)(6)] topic based on that blanket objection"). To permit BD to preemptively assert a blanket claim of attorney-client or work-product privilege for certain Rule 30(b)(6) topics would "create[] an unworkable circumstance in which [Baxter] loses a primary means of discovery without a meaningful review of [BD's] claim of privilege." *SEC v. Kramer*, 778 F. Supp. 2d 1320, 1328 (M.D. Fla. 2011). Rather, BD must produce a knowledgeable witness to testify and then, if any question asked during the deposition ventures into what BD claims is privileged territory, BD's counsel is free to object to the particular question at issue, state the asserted privilege, and instruct the witness not to answer on the basis of that privilege. *See City of Chicago v. Wolf*, No.

91 C 8161, 1993 WL 112546, at *3 (N.D. Ill. Apr. 9, 1993) (refusing to completely prohibit a deposition on the grounds of privilege and explaining that "[t]o the extent there is any claim of privilege, plaintiffs will have to object to particular questions at the deposition"); *Consumer Fin. Prot. Bureau*, 2016 WL 9460471, at *11 ("To the extent that a privilege of any nature exists, it must be interposed by way of objection during the Rule 30(b)(6) deposition itself"); *Merkin*, 283 F.R.D. at 698 ("Counsel may protect against the disclosure of work product or privileged information in 30(b)(6) depositions by interposing appropriate objections and giving instructions on a question-by-question basis"); *Bryant*, 2007 WL 5430885, at *3 ("To the extent that [a Rule 30(b)(6)] deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis").

Accordingly, we order BD to designate and produce a witness (or witnesses) to testify about Topics 6, 7, and 8 in Baxter's Second Amended Rule 30(b)(6) notice. To be clear, we are not saying that Baxter is entitled to obtain Rule 30(b)(6) testimony from BD about information protected by the attorney-client or work-product privileges. At the same time, BD's attorneys should ensure that they only instruct their Rule 30(b)(6) witnesses to not answer questions that truly would invade either privilege, as these privileges are properly construed.

## IV.

We conclude with some observations about Local Patent Rule 3.6, which addresses discovery concerning "opinions of counsel." We do so in light of BD's contention that it is premature to allow Baxter to obtain the Rule 30(b)(6) testimony it seeks unless and until BD elects to waive the attorney-client privilege and rely on the advice of counsel to defend against any potential charge of willful infringement (Def.'s Opp'n to Pl.'s Revised 3d Mot. to Compel, at 8).

To defend against a charge of willful patent infringement, an accused infringer may argue that it relied upon an opinion from counsel that it did not infringe the patent at issue or that the patent is invalid. *See Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1352-53 (Fed. Cir. 2019); *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006). Invoking this defense, however, waives the attorney-client privilege over "all other communications relating to the same subject matter." *In re EchoStar*, 448 F.3d at 1299 (internal quotations omitted). Under Local Patent Rule 3.6, discovery into "[t]he substance of a claim of reliance on advice of counsel . . . and other information within the scope of a waiver of the attorney client privilege based upon disclosure of such advice" is not permitted until seven days after the court's claim construction ruling. LPR 3.6(a); *see also* LPR 3.6(e) (delaying fact discovery relating to advice of counsel until seven days after a claim construction ruling). If the accused infringer decides to rely upon an "opinion of counsel" defense, it must affirmatively disclose the following information seven days after the claim construction ruling: (1) "[a]ll written opinions of counsel upon which the party will rely; (2) "[a]ll information provided to the attorney in connection with the advice; (3) "[a]ll written attorney work product developed in preparing the opinion that the attorney disclosed to the client; and (4) [i]dentification of the date, sender and recipient of all written and oral communications with the attorney or law firm concerning the subject matter of the advice by counsel." LPR 3.6(b).

Local Patent Rule 3.6 recognizes that relying upon an "opinion of counsel" defense is not a decision to be made lightly: invoking the defense waives the privilege not only for the opinion(s) at issue but also for other communications regarding the same subject matter. As such, it makes sense to allow an accused infringer to hold off on making this decision until later in the litigation, *i.e.*, after fact discovery has been completed or substantially completed and after the claim construction ruling. This gives the accused infringer the ability to consider both the discovery

received and the claim construction ruling before it must determine whether to take the weighty step of waiving its attorney-client privilege.

At the same time, Local Patent Rule 3.6 does not preclude all discovery into issues related to willful infringement. The rule specifically does not address the discoverability of "materials other than those listed in LPR 3.6(b)(1-4)," which all specifically relate to the written opinions upon which an accused infringer ultimately relies for its "opinion of counsel" defense. LPR 3.6(d). Thus, Local Patent Rule 3.6 does not prevent a patent owner from seeking other information that may help it determine whether it can assert willful infringement in the first place, such as the facts and circumstances surrounding the accused infringer's knowledge of a patent. Indeed, deferring when an accused infringer must decide whether to waive the privilege and rely on advice of counsel presumes that other discovery will have occurred that informs this important decision. Thus, the fact that BD is not yet required to decide whether to waive the privilege and rely upon an "opinion of counsel" defense (Def.'s Opp'n to Pl.'s Revised 3d Mot. to Compel, at 5, 8) is true, but irrelevant here, and it does not empower BD to withhold other, non-privileged information that relates to willful infringement.

## CONCLUSION

Accordingly, we grant in part and deny in part Baxter's motion to compel (docs. ## 124, 126, 132). The parties shall consult with each other to reach agreement on dates for BD to revise its privilege log and provide a Rule 30(b)(6) witness on Topics 6, 7, and 8. The parties shall file a report by the close of business on August 2, 2019 that sets forth the agreed dates, or, if there is no agreement, the dates each side proposes.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

**DATE: July 26, 2019**