IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BAXTER INTERNATIONAL, INC., | ) | |
| | ) | Case No. 17 C 7576 |
| Plaintiff, | ) | |
| | ) | District Judge Lefkow |
| v. | ) | |
| | ) | Magistrate Judge Schenkier |
| BECTON, DICKINSON AND COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Becton, Dickinson and Company ("BD") has moved to compel plaintiff Baxter International, Inc. ("Baxter") to provide documents, interrogatory responses, and corporate testimony relating to Baxter's knowledge and evaluation of the market in which the products that are accused of infringing Baxter's patents are marketed and sold (doc. # 210: Def.'s Mot., at 1; doc. # 212: Def.'s Mem., at 1). Baxter has countered with its own motion to compel, whereby it seeks to compel BD to designate and produce a witness to testify regarding certain Rule 30(b)(6) topics (docs. ## 217, 218: Pl.'s Mot., at 1). The motions are fully briefed (*see* doc. # 236: Def.'s Opp'n; doc. # 241: Pl.'s Opp'n; doc. # 258: Def.'s Reply; doc. # 259: Pl.'s Reply).[1] Our rulings on the motions are set forth below.[2]

---

[1] In briefing these motions, both parties have filed numerous documents under seal (*see* docs. ## 212-14, 218-20, 237, 241-43, 258, 260-65). If we refer to a sealed document, we attempt to do so without revealing any information that could be reasonably deemed confidential. Nonetheless, to the extent we discuss confidential information, we have done so because it is necessary to explain the path of our reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality"); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (explaining that a judge's "opinions and orders belong in the public domain").

[2] On December 20, 2019, the district court issued an order granting BD's motion for summary judgment of non-infringement as to one patent asserted by Baxter and denying BD's motion for summary judgment of non-infringement as to another asserted patent (doc. # 275). Baxter subsequently moved for reconsideration of the district

BD seeks to compel the production of discovery relating to the following four categories of information: (1) Baxter's efforts to enter the market for closed system transfer devices ("CSTDs");[3] (2) Baxter's attempt to enter the CSTD market with its SureConnect product; (3) the suitability and value of the asserted patented features in the CSTD market; and (4) Baxter's evaluation of other available products in the CSTD market (Def.'s Mem. at 1). BD contends that all this information is highly relevant to the determination of a reasonable royalty and the acceptability of available non-infringing alternatives (Id.). We address each category of information in turn.

## A.

BD first seeks an order compelling Baxter to (1) produce within 14 days all non-privileged documents that are responsive to Document Requests 44 and 45, which seek documents and things referring or related to the market for CSTDs and Baxter's efforts to enter the CSTD market; and (2) provide a witness pursuant to Federal Rule of Civil Procedure 30(b)(6) to testify about Rule 30(b)(6) Topics 12, 13, and 20, which relate to Baxter's awareness of, and efforts to, enter that market (Def.'s Mem. at 6-7). In response, Baxter represents that it agreed to produce documents responsive to Document Requests 44 and 45 that it "identified as a result of a reasonable search" and that it has produced those documents (Pl.'s Opp'n at 3). Baxter also represents that it will

---

court's grant of summary judgment (doc. # 281). Neither the district court's summary judgment order nor the district court's resolution of Baxter's motion for reconsideration affect the discovery issues addressed by this opinion.

[3] A CSTD is a "drug transfer device that mechanically prohibits the transfer of environmental contaminants into the system and the escape of hazardous drug or vapor concentrations outside the system" (Def.'s Mem. Ex. O at BD021992_0050). Baxter alleges that the product accused of infringement, BD's PhaSeal System, is a CSTD (doc. # 48: Pl.'s 2d Am. Compl. at ¶ 9). Although BD initially denied this (doc. # 77: Def.'s Answer, Defenses, and Counterclaims at 4-5), it now concedes that the PhaSeal System is a CSTD (Def.'s Mem. at 5) (stating that the "Second Amended Complaint correctly identifies" the accused product as a CSTD).

designate and produce witnesses to testify concerning Rule 30(b)(6) Topics 12, 13, and 20 (*Id.* at 1, 3-4). Baxter contends that these representations render this portion of BD's motion moot (*Id.* at 3-4). BD disagrees and reiterates its request to have us order Baxter to produce the documents and Rule 30(b)(6) testimony at issue (Def.'s Reply at 3).

These issues should have been resolved without motion practice. Baxter should have given BD a date certain by which it would complete its document production in response to Document Requests 44 and 45. Regardless of the number of variables that might make producing documents "on a rolling basis" easier, the requesting party is entitled at some point to know when the producing party will complete (or has completed) its production. Otherwise, the producing party could indefinitely stave off motions to compel with repeated promises that responsive documents are forthcoming. Here, with Document Requests 44 and 45 already outstanding for three months and the first part of discovery closed (*see* Def.'s Mem. Ex. H at 4-5; doc. # 99: 4/9/19 Order, at 2), it was reasonable for BD to ask Baxter to provide a date certain for the document production at issue. Nor was BD obligated to propose its *own* date certain; it is Baxter, not BD, who is in the better position to say by when the production of the requested documents would be completed.

As for the Rule 30(b)(6) topics, it is unclear what changed between September 25—when Baxter presumably refused to produce a witness for Topics 12, 13, and 20 during the parties' meet and confer (*see* Def.'s Reply Ex. V at 1)—and December 2, when Baxter agreed to produce a witness for these topics (Pl.'s Opp'n at 1, 3-4). Considering that BD did not move on this issue until several weeks after it was first raised, the meet and confer process would have been more efficient had the parties discussed and confirmed the issues on which they were truly at an impasse closer in time to the filing of BD's motion. Such a discussion would have dispelled Baxter's

claimed belief that BD had abandoned its pursuit of testimony for Topics 12, 13, and 20 (Pl.'s Opp'n at 3-4 & n.2).

Given Baxter's representations, we could deny BD's motion to compel as moot, but because of the foregoing history of unproductive or inconclusive meet and confer sessions, the better route is to grant BD's motion with respect to Document Requests 44 and 45 and Rule 30(b)(6) Topics 12, 13, and 20. Even now, Baxter represents only that it produced responsive documents that it identified after a reasonable search (Pl.'s Opp'n at 3); Baxter does not represent that it has produced *all* the responsive documents it has found as a result of this search. Nor has Baxter offered a time frame for presenting a Rule 30(b)(6) witness (*Id.* at 3-4). Thus, we order Baxter to complete its production regarding Document Requests 44 and 45 within 21 days of this opinion. Baxter must also complete any production it has represented would be made "on a rolling basis," *e.g.*, its production in response to Document Requests 50-54, 65, and 67-69 (*see* Def.'s Mem. at 4 n.2; *id.*, Ex. H at 4), within 21 days of this opinion. If Baxter has already completed these productions, it should inform BD as such. We also order Baxter to designate and make available a witness or witnesses to provide testimony concerning Rule 30(b)(6) Topics 12, 13, and 20 at a mutually-agreeable time and place, but no later than 35 days after the date of this opinion.

**B.**

Next, we turn to the discovery disputes surrounding Baxter's SureConnect product. SureConnect was a CSTD that was being developed by a company named Baxa Corporation (Pl.'s Opp'n at 10 n.10). After Baxter acquired Baxa in November 2011, it explored whether to continue developing SureConnect (*Id.*). Ultimately, however, Baxter decided to cancel the SureConnect project in November 2012, and it never commercialized SureConnect or otherwise brought the product to market (*Id.* at 9-10; Def.'s Mem. Ex. M).

4

With respect to SureConnect, BD seeks to compel the production of documents responsive to the following document requests:

> **Request No. 24:** All instructions, manuals, catalogs or other product literature relating to the Baxter SureConnect product.

> **Request No. 27:** All documents relating to projections of future sales, product positioning, market forecasting, or competitive analysis for the Baxter SureConnect product.

> **Request No. 29:** A sample of each advertisement, brochure, presentation, catalog, manual, correspondence, marketing literature, white paper, or other document you have used to promote the Baxter SureConnect product.

> **Request No. 31:** All customer testimonials, complaints, feedback and comments regarding the Baxter SureConnect product.

> **Request No. 33:** All periodic financial statements and internal management reports concerning or including information regarding the Baxter SureConnect product.

> **Request No. 46:** All documents and things referring or related to Baxter's decision not to pursue the SureConnect Product.

(Def.'s Mem. at 1, 8-9; *id.*, Ex. A at 11-12; *id.*, Ex. G at 7). BD also wants a Rule 30(b)(6) witness to testify about the structure and function of the SureConnect product (Topic 16) and the product's development (Topic 17) (Def.'s Mem. at 9-10; *id.*, Ex. K at 6).

Baxter has provided some documents related to SureConnect, as well as corporate testimony about (1) Baxter's evaluation of SureConnect in connection with Baxter's acquisition of Baxa and (2) Baxter's decision not to bring SureConnect to market (Def.'s Mem. at 2-3, 9; Pl.'s Opp'n at 9-11). Nonetheless, Baxter asserts that it "has consistently been of the view" that SureConnect is irrelevant and "related discovery is not proportional to the needs" of the case because the product was never commercialized or sold (Pl.'s Opp'n at 10). Thus, Baxter contends that *further* discovery into SureConnect is inappropriate because SureConnect "was never sold and

is therefore irrelevant to the CSTD market and to the issue of available non-infringing alternatives" (*Id.* at 2, 11).

1.

We start with the document requests. On August 7, 2019, Baxter represented that it had searched for SureConnect-related documents that were responsive to Document Requests 24, 27, 29, 31, and 33 but had "not identified any non-privileged responsive documents beyond those already produced" (Def.'s Mem. Ex. E at 1-3). Baxter further represented that, "[t]o the extent any additional non-privileged responsive documents are identified, they will be produced, consistent with Baxter's written response to RFP Nos. 24, 27, 29, 31, and 33" (*Id.* at 3).

Baxter cannot now back away from these representations. Document Requests 24, 27, 29, 31, and 33 were served in February 2018 (Def.'s Mem. Ex. A). If, as Baxter now claims, it has always maintained that documents responsive to these requests were neither relevant nor proportional to the needs of the case, Baxter should have declined to produce documents and sought a protective order on those grounds from the very beginning—or, at the very least, well before the initial close of fact discovery. Instead, it represented as late as August 2019 (a year-and-a-half after the requests were served) that it would produce additional responsive documents if it found any. It was only two weeks before the initial close of fact discovery that Baxter asserted that it would not be doing so.[4] That is much too late in the game for Baxter to change its position.

In any event, Document Requests 24, 27, 29, 31, and 33 seek relevant information that Baxter would be required to produce without regard to its prior representations. Documents

---

[4] Although Baxter claims that it did not "reverse[] its prior representations and state[] that it knew more SureConnect documents existed that it had not produced" at the September 25, 2019 meet and confer, Baxter does not dispute that during this meet and confer, Baxter indicated in some manner that it would not be producing any more documents in response to the document requests at issue (Pl.'s Opp'n at 11 n.11).

responsive to these requests may show how Baxter and others viewed the SureConnect product or particular features of the product, which, to the extent SureConnect or its features coincide with Baxter's patent claims, could provide evidence regarding the value of Baxter's patented (and allegedly infringed) features. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("What is taken from the owner of a utility patent (for purposes of assessing damages under § 284) is only the patented technology, and so the value to be measured is only the value of the infringing features of an accused product").

As for Document Request 46, we find that documents relating to Baxter's decision not to pursue the SureConnect product are likewise relevant and should be produced. Indeed, the fact that Baxter presented a corporate witness to testify about Baxter's decision not to bring SureConnect to market suggests that Baxter recognizes the relevance of that subject (*see* Pl.'s Opp'n at 10). Moreover, BD is entitled to see if Baxter possesses documents that bolster or undermine Baxter's Rule 30(b)(6) testimony about the issue. Similarly, BD is entitled to see if other Baxter documents support or contradict the November 19, 2012 email about the cancellation of SureConnect that Baxter produced and that it says "makes clear" the reason for the cancellation (*Id.* at 9-10; Def.'s Mem. Ex. M).

Thus, we order Baxter to produce all non-privileged documents responsive to Document Requests 24, 27, 29, 31, 33, and 46 within 21 days of this opinion.

**2.**

Baxter refused to designate a witness for Rule 30(b)(6) Topics 16 and 17 (and other topics) unless BD agreed to narrow the topics "to a more proportionate scope" (Def.'s Reply Ex. V at 1). From the meet-and-confer correspondence, however, it is unclear what aspect of these topics Baxter considered to be out of proportion to the needs of the case. Even now, Baxter does not

specifically explain what makes Topics 16 and 17 unpalatable; instead, Baxter broadly argues that discovery into the SureConnect device is irrelevant and not proportional because SureConnect was never sold or commercialized (Pl.'s Opp'n at 2, 10-11).

We disagree. For one thing, Baxter's production of (and agreement to produce) documents regarding SureConnect and its designation of a witness to testify about certain SureConnect issues suggests the relevance of this discovery. Furthermore, although Baxter asserts that the cancellation of the SureConnect project was a business decision based on the cost of production (Pl.'s Opp'n at 9-10), Baxter's Rule 30(b)(6) witness testified that one reason Baxter did not bring SureConnect to market was because of "some concerns about functionality" (Pl.'s Opp'n Ex. B at 17:22-18:6, 127:23-128:5). To the extent they relate to features Baxter considers to be within the scope of its patent claims, those functional concerns could provide evidence regarding the value of Baxter's patented features. *See Ericsson*, 773 F.3d at 1226.

In addition, BD has identified documents showing that Baxter compared features of SureConnect to the features of BD's PhaSeal System (the product accused of infringing Baxter's patents) and other products that BD asserts are non-infringing alternatives (Def.'s Reply at 5-7; *id.*, Exs. S and T). Baxter's evaluation and characterization of SureConnect's features, especially as compared to features of the accused products and other products in the market, may shed light on how Baxter valued both features that it considers to be within the scope of its patent claims and features that it contends are not part of its patented invention. *See Ericsson*, 773 F.3d at 1226 ("When the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features"); *see also Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (explaining that when multi-component products are involved, an admissible expert damages opinion "must

separate the value of the allegedly infringing features from the value of all other features"). This is true even though Baxter ultimately did not end up selling SureConnect on the market.

Obtaining testimony about the structure, function, and development of SureConnect—to which the Rule 30(b)(6) topics at issue are directed—will allow BD to explore these possibilities. Thus, we order Baxter to designate and make available a witness or witnesses to provide testimony concerning Rule 30(b)(6) Topics 16 and 17 at a mutually-agreeable time and place, but no later than 35 days after the date of this opinion.

## C.

The next discovery dispute involves Baxter's Vial-Mate product. Baxter asserts that the Vial-Mate product "practices certain claims of the Patents-in-Suit" (Pl.'s Opp'n at 11). BD seeks to compel Baxter to produce documents responsive to the following Vial-Mate-related document requests:

> **Request No. 47:** All documents and things referring or related to the suitability or unsuitability of Baxter's Vial-Mate product for use with chemotherapy drugs.
>
> **Request No. 48:** All documents and things referring or related to the suitability or unsuitability of Baxter's Vial-Mate product for use with cytotoxic drugs.
>
> **Request No. 49:** All documents and things referring or related to the leakage of drugs from, or while using, Baxter's Vial-Mate product.

(Def.'s Mem. at 10; *id.*, Ex. G at 8-9). BD claims that the documents sought by these requests "are relevant to the value of the asserted patent features, the acceptability of non-infringing alternatives, and the definition of the relevant product market" (Def.'s Mem. at 10).

Baxter does not meaningfully dispute the relevance of Document Requests 47-49 (*see* Pl.'s Opp'n at 11-12). To the contrary, Baxter claims that it has already produced documents in response

to these requests and that it has provided Rule 30(b)(6) deposition testimony on similar topics (*id.* at 12), which indicates that Baxter believes that the requested discovery is relevant.

And we independently find that the information sought by Document Requests 47-49 is relevant to Baxter's claim for damages. Document Requests 47 and 48 explicitly seek documents related to the suitability of Vial-Mate for use with chemotherapy and cytotoxic drugs, and Document Request 49 does so implicitly, as a leaky drug transfer device would presumably be less suitable for use with these drugs. The Vial-Mate's suitability (or lack thereof) for use with chemotherapy and cytotoxic drugs, in turn, may shed light on the following factors that are relevant to the determination of a reasonable royalty: the established profitability of the Vial-Mate product, its commercial success and current popularity, the character of the Vial-Mate product as owned and produced by Baxter, and the benefits to those who have used Baxter's invention as embodied in the Vial-Mate product. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (factors 8 and 10); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("This court has sanctioned the use of the *Georgia-Pacific* factors to frame the reasonable royalty inquiry").

Baxter's argument appears to be that it would not be proportional to the needs of the case for us to order it to *further* respond to Document Requests 47-49 (Pl.'s Opp'n at 12). But Baxter provides no facts to back up this apparent assertion. *See Cty. of Cook v. Bank of Am. Corp.*, No. 14 C 2280, 2019 WL 5393997, at *6 (N.D. Ill. Oct. 22, 2019) ("As the party resisting discovery, the County bears the burden of showing that Defendants' proposed custodians are not proportional to the needs of the case"); *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) ("The burden rests upon the objecting party to show why a particular discovery request is improper"). For example, Baxter does not tell us how many documents it has already produced

in response to Document Requests 47-49 or how many responsive documents have not yet been produced. Nor does Baxter identify anything indicating that carrying out a reasonable search for additional responsive documents would be unduly burdensome.

Thus, we grant BD's motion to compel with respect to Document Requests 47, 48, and 49. Baxter shall conduct a reasonable search for and produce all non-privileged documents responsive to these requests within 21 days of this opinion. If, after a reasonable search, Baxter does not identify any additional responsive documents, it should explicitly convey that fact to BD.

### D.

The last discovery dispute raised by BD's motion involves Interrogatories 19 and 20, Document Requests 55 through 63, and Rule 30(b)(6) Topic 23 (Def.'s Mem. at 11-14). The interrogatories and document requests seek information about particular products that BD appears to contend are acceptable non-infringing alternatives to the accused PhaSeal product (*see id.*). The deposition topic is broader in that it seeks testimony about the acceptability of commercially available CSTDs as alternatives for the accused products without identifying any particular CSTD products (*see id.* at 14). Baxter does not dispute that available acceptable non-infringing alternatives are relevant to the determination of a reasonable royalty. But Baxter asserts that those alternatives must be *available to an accused infringer* to be relevant, *i.e.*, the alternatives were offered, or could have been offered, for sale by BD or a company acquired by BD. Based on this assertion, Baxter argues that it should not be compelled to produce discovery in response to the interrogatories, document requests, and Rule 30(b)(6) topic at issue (Pl.'s Opp'n at 4-6, 8-9).

Baxter interprets the term "available" too narrowly. A non-infringing alternative sold by a third party may still be available to BD in one of two ways. *First*, if a third party has not protected its non-infringing alternative with a patent or other intellectual property, BD could copy and sell

the non-infringing design as its own. *See Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 579 (7th Cir. 2005) (a company has the right to reverse-engineer and copy products "down to the last detail unless a feature of the product is protected by patent, copyright, or trademark law").

*Second*, if a third-party non-infringing alternative is protected by intellectual property, BD could take a license and sell the non-infringing product as the third-party's licensee. In both scenarios, BD would not have to choose between practicing Baxter's patents or leaving the relevant market; it could participate in the market without infringing Baxter's patents by selling a third party's non-infringing design. This might affect the reasonable royalty to which the parties would agree in the hypothetical negotiation, especially if the cost to BD in either scenario would be less than the cost of taking a license from Baxter. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334-35 (Fed. Cir. 2015) ("When an infringer can easily design around a patent and replace its infringing goods with non-infringing goods, the hypothetical royalty rate for the product is typically low"); *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002) ("The economic relationship between the patented method and non-infringing alternative methods, of necessity, would limit the hypothetical negotiation"); *cf. Sprint Commc'ns Co. v. Time Warner Cable, Inc.*, 760 F. App'x 977, 984 (Fed. Cir. 2019) (noting that the "absence of non-infringing alternatives would strengthen the patentee's hand in" the hypothetical negotiation).[5]

In any event, even if there were non-infringing alternatives that were not available to BD, that unavailability would not automatically render those alternatives irrelevant to a reasonable royalty analysis. Although courts may have identified non-infringing alternatives that are available

---

[5] The existence of non-infringing alternatives sold by third parties would also potentially be relevant to the determination of lost profits damages. *E.g., Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1286 (Fed. Cir. 2017); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991). Baxter, however, disclaimed any theory of damages based on lost profits (doc. # 287: 8/14/19 Hr'g Tr. at 9:13-19).

to the accused infringer as a factor in determining reasonable royalty damages, this recognition does not necessarily exclude *other* non-infringing alternatives from the relevant scope of discovery. In determining a reasonable royalty, a party may "estimate the value of the benefit provided by the infringed features by [] comparing the accused product to non-infringing alternatives." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). An accused infringer need not have the ability to sell the non-infringing alternative before the alternative's features can be compared to those of the accused product for valuation purposes.[6]

The fact that a potentially non-infringing alternative product was made by a third party (and not by BD or a company acquired by BD) is not a basis for Baxter to refuse to provide discovery regarding that product. With this in mind, we address the particular discovery in dispute.

### 1.

BD's Interrogatories 19 and 20 seek Baxter's contentions regarding one BD product (Texium) and nine third-party products (Equashield, B. Braun Onguard, Tevadaptor, Corvida Medical Halo, ICU Medical ChemoLock, ICU Medical Genie, ICU Medical Spiros, ICU Medical Vented Vial Access devices, and JMS NeoShield) (Def.'s Mem. Ex. P at 5, 7). For Interrogatory 19, if Baxter contends that any of these ten products is not an acceptable substitute for BD's PhaSeal product, then Baxter is to explain why that product is allegedly unacceptable (*Id.* at 5).

---

[6] Baxter highlights the fact that BD's responses to interrogatories directed to acceptable non-infringing alternatives only identify products that were offered or could have been offered by BD or entities acquired by BD (Pl.'s Opp'n at 6-8). But Interrogatory 18 was limited to products that were "designed, developed, made, used, offered for sale, and/or sold" by BD, and Interrogatory 19 was limited to non-infringing redesigns that BD could have implemented (*Id.* at 6-7; Pl.'s Mem. Ex. D at 3-4). Thus, these interrogatories do not seek information about non-infringing designs that do not fall into one of these two categories. Furthermore, information about acceptable non-infringing designs is relevant to a reasonably royalty calculation regardless of whether BD implemented or could have implemented the designs.

For Interrogatory 20, if Baxter contends that any of these ten products infringes a claim from Baxter's asserted patents, then Baxter is to provide a claim chart explaining the alleged infringement (*Id.* at 7).

Baxter failed to substantively respond to either interrogatory. Baxter's response to Interrogatory 19 is simply a litany of objections (Def.'s Mem. Ex. P at 5-6). Baxter's response to Interrogatory 20 includes the same objections and then goes on to state that Baxter does not contend that Texium infringes any asserted patent claim (*Id.* at 7-8). But this statement, which identifies one product *not* accused of infringement, does not respond to the interrogatory asked, which sought Baxter's contentions about products that purportedly *do* infringe.

Other than the relevance argument about third-party products that we already rejected, Baxter sets forth two additional reasons for why its refusal to answer Interrogatories 19 and 20 was justified. Neither reason is persuasive.

*First*, Baxter erroneously asserts that BD "bears the burden of establishing that any claimed [non-infringing] alternative was available to it during the accounting period" (Pl.'s Opp'n at 8). This may be true when, in the context of a lost profits calculation, the alleged non-infringing alternative is not on the market during the relevant timeframe. *See Grain Processing Corp. v. Am. Maize-Prods.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999). Lost profits damages, however, are not at issue here; Baxter is only seeking reasonable royalty damages (doc. # 287: 8/14/19 Hr'g Tr. at 9:13-19), and Baxter bears the ultimate burden of proving damages, including those based on a reasonable royalty. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *see also Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017) (a patentee must prove its entitlement to lost profits damages). In any event, a party cannot refuse to answer discovery on an issue simply because it does not bear the burden of proof on it.

14

*See, e.g., Finjan, Inc. v. ESET, LLC*, No. 17CV183 CAB (BGS), 2018 WL 4772124, at *2 (S.D. Cal. Oct. 3, 2018) ("That ESET always has the burden of proving invalidity, does not mean Finjan's positions on validity are not relevant or potentially within the scope of permissible discovery"). In fact, the Local Patent Rules require each party to provide its contentions on issues for which it does not bear the burden of proof—invalidity for the patent owner and infringement for the accused infringer. *See* N.D. Ill. LPR 2.3, 2.5.

*Second*, Baxter asserts that "it is notable" that BD has allegedly failed to provide a substantive response to an interrogatory similar to BD's Interrogatory 19 (Pl.'s Opp'n at 9 n.8). This is neither notable nor particularly relevant—BD's "alleged failure or inability to respond to discovery [does] not excuse [Baxter's] prompt compliance with discovery requests." M.J. Schenkier's Case Procedures, Meeting Requirement on Motions, https://www.ilnd.uscourts.gov/judge-info.aspx?EBclBxz8ceU=; *see also Gropper v. David Ellis Real Estate, L.P.*, No. 13 Civ. 2068 (ALC) (JCF), 2014 WL 518234, at *3 (S.D.N.Y. Feb. 10, 2014) ("[O]ne party's noncompliance with discovery requirements does not excuse the other's failure to comply"). BD's purportedly inadequate interrogatory response does not relieve Baxter of its obligation to provide adequate interrogatory responses to Interrogatories 19 and 20.

We therefore grant BD's motion to compel Baxter to respond to Interrogatories 19 and 20. Baxter must supplement its responses to these interrogatories within 21 days of this opinion.

## 2.

Document Requests 55-63 seek all documents and things referring or related to the nine third-party products identified in BD's Interrogatories 19 and 20 (Def.'s Mem. Ex. I at 8-14). Baxter contends that these requests are not relevant and proportional to the needs of the case because the identified third-party products do not constitute non-infringing alternatives that were

available to BD (Pl.'s Opp'n at 8-9 & n.9). Baxter's erroneous view about which non-infringing alternatives are relevant to this case is not a proper basis for Baxter to refuse to produce documents in response to the requests at issue. As such, we order Baxter to produce all non-privileged documents responsive to Document Requests 55-63 within 21 days of this opinion.

### 3.

Finally, BD requests an order compelling Baxter to provide a witness to testify about Rule 30(b)(6) Topic 23, which seeks testimony about "[t]he acceptability or unacceptability of commercially available closed-system transfer devices (CSTDs) as alternatives for the accused products in the 2011-2017 timeframe" (Def.'s Mem. at 14; *id.*, Ex. K at 8). The acceptability of CSTDs—specifically those CSTD devices that do not infringe—as alternatives for the accused products is relevant to the determination of a reasonable royalty. Indeed, Baxter does not attempt to justify its refusal to provide a witness for this topic other than to contend that the nine third-party alternative devices identified by BD were not available to the accused infringer (Pl.'s Opp'n at 4-9). But we have already rejected Baxter's arguments related to this contention, so Baxter has provided no legitimate basis for refusing to offer testimony on Topic 23. Accordingly, we order Baxter to designate and make available a witness or witnesses to provide testimony about Rule 30(b)(6) Topic 23 at a mutually-agreeable time and place, but no later than 35 days after the date of this opinion.

### II.

We now turn to Baxter's motion to compel, which seeks to compel BD to designate and produce a witness to testify regarding Topics 28 through 34 of its third amended Rule 30(b)(6) notice of deposition. After reciting the relevant background, we address the parties' arguments.

## A.

On September 27, 2018, Baxter served a Rule 30(b)(6) notice of deposition identifying 17 topics (Def.'s Opp'n Ex. 1). Two weeks later, Baxter served an amended Rule 30(b)(6) notice, which kept the same 17 topics and added two more (Def.'s Opp'n Ex. 2).[7] BD served objections to Baxter's amended Rule 30(b)(6) notice on October 24, 2018 (Def.'s Opp'n Ex. 3). None of these objections challenged the validity of the notice (*See id.*).

From November 26, 2018 to March 28, 2019, the case was stayed (docs. ## 94, 98). On May 24, 2019, Baxter served a second amended Rule 30(b)(6) notice (Def.'s Opp'n Ex. 4). This notice amended two Rule 30(b)(6) topics and added two more topics, bringing the total to 21 topics (*Compare* Def.'s Opp'n Ex. 2 at 2-3, *with* Def.'s Opp'n Ex. 4 at 2-3). It does not appear that Baxter had yet deposed BD about any Rule 30(b)(6) topic when Baxter served its second amended notice. On June 10, 2019, BD served objections to Baxter's second amended Rule 30(b)(6) notice (Def.'s Opp'n Ex. 5). Again, BD did not object to the validity of this notice (*See id.*).

On June 17, 2019, BD designated Michael Van Fleet, a Senior Director for Sales and Marketing and a Global Business Leader at BD, to testify regarding Topics 5 and 17-20 from Baxter's second amended Rule 30(b)(6) notice (Def.'s Opp'n Ex. 6 at 2; Def.'s Opp'n Ex. 7). These topics read as follows:

> 5.     BD's first knowledge or awareness of the Patents-in-Suit, including but not limited to how and when BD first became aware of the Patents-in-Suit.
>
> 17.     Instructional materials distributed to third-parties concerning the Accused Products.
>
> 18.     Instructions provided with or covering the Accused Products.

---

[7] We refer to Baxter's Rule 30(b)(6) notices as "amended" notices merely because that is how Baxter titled them.

19.     User manuals, instruction manuals, owner's guides, promotional and/or marketing materials, and/or other materials provided to, or available to, buyers, distributors, and/or users of the Accused Products.

20.     Warrantees [sic] provided with or covering the Accused Products.

(Def.'s Opp'n Ex. 4 at 2-3). BD's counsel made Mr. Van Fleet available to testify on these topics and in his personal capacity based on the understanding that Baxter would "not seek to further depose [Mr. Van Fleet] in this case again irrespective of any future discovery" (Def.'s Opp'n Ex. 6 at 1-2). Baxter's counsel did not express any reservations about or disagreement with this understanding (*Id.* at 1). On July 24, 2019, BD made Mr. Van Fleet available to be deposed on Topics 5 and 17-20 (Pl.'s Reply Ex. A ("Van Fleet Dep.") at 5:1-13, 33:1-34:12).[8]

On September 4, 2019—about six weeks after Mr. Van Fleet's deposition and five weeks before the October 9, 2019 initial close of fact discovery (4/9/19 Order at 2)—Baxter served a third amended Rule 30(b)(6) notice (Pl.'s Mot. Ex. A). This notice included 15 additional Rule 30(b)(6) topics (Topics 22-36), most of which relate to the issue of damages (*Id.* at 2-4). On September 11, BD made Jeanne Lukasavage available to be deposed on two topics that were included for the first time in the third amended notice: Topics 35 and 36 (doc. # 193 at 5:1-16, 27:11-29:19). A little more than a week later, on September 19, BD served objections to the third amended Rule 30(b)(6) notice (Pl.'s Mot. Ex. B). BD did not object to the validity of the Rule 30(b)(6) notice in its entirety (*see generally id.*), and BD agreed to produce witnesses for several topics that first appeared in the third amended notice (*see id.* at 7-9) (agreeing to designate a witness for aspects of Topics 22-27).

But BD took a different approach to Topics 28 through 34. BD refused to produce a witness to testify about any of these topics, which state as follows:

---

[8] Because of a dispute over the adequacy of Mr. Van Fleet's preparation on Topic 5, BD later designated the testimony of another witness, Jeanne Lukasavage, as its corporate testimony for this topic (Pl.'s Mot. Ex. C at 5-6).

28.     Decisions, and the bases therefor, concerning the pricing for the Accused Products.

29.     The market for reconstitution devices, including BD's share of that market.

30.     Marketing/advertising by BD for the Accused Products.

31.     Business or strategic planning for the Accused Products.

32.     Estimates, forecasts, or projections of sales, costs, or profits concerning the Accused Products.

33.     BD's knowledge and awareness of reasons for consumer demand for the Accused Products.

34.     Acceptable noninfringing alternatives to the Accused Products.

(Pl.'s Mot. Ex. B. at 9-11). Among other objections, BD objected to each of these topics on the basis that it was "an improper attempt to seek further deposition testimony from a witness that Baxter has already deposed in both his personal and Rule 30(b)(6) capacities" (*Id.*). For Topic 34, BD also objected on the basis that the topic called for information that is the subject of expert testimony and is protected by attorney-client privilege and the work product doctrine (*Id.* at 10-11).

On September 25, 2019, the parties discussed the possibility of BD making Mr. Van Fleet available again for a limited Rule 30(b)(6) deposition on Topics 28 through 33 (Pl.'s Mot. Ex. F at 3). On October 3, BD agreed to make Mr. Van Fleet available on October 17 "for a further deposition limited to 3 hours of time and 30(b)(6) Topic Nos. 28-33, with no personal examination beyond the scope of those topics permitted" (*Id.* at 2-3). Baxter balked at the three-hour time limit, and it asked to take Mr. Van Fleet's deposition "without a preexisting limit on the duration of his testimony" (*Id.* at 2). In an October 4 email, BD refused, but stated that it would provide Mr. Van

Fleet "for the remainder of the 7 hours from his initial deposition" (*Id.* at 1).[9] BD did not indicate how much time this entailed (*id.*), but by Baxter's calculation, 4 hours and 43 minutes remained from Mr. Van Fleet's deposition (Pl.'s Mot. Ex. C at 4). On October 9, Baxter asked if BD agreed with this calculation—if so, Baxter would agree to BD's proposal (*Id.*). Baxter also asked whether BD intended to designate Mr. Van Fleet to testify about Topic 34 (*Id.*).

Less than 24 hours later, and before Baxter received a response to either question, Baxter adjourned Mr. Van Fleet's scheduled October 17 deposition "[g]iven the uncertainty as to whether BD intends to designate Mr. Van Fleet concerning Topic No. 34, as well as the fact that BD has not yet produced any documents or product samples responsive to Baxter's Amended Third Request for Documents (many of which concern this Topic)" (Pl.'s Mot. Ex. C at 3-4). As Baxter put it, "[o]nce these issues have been addressed, either by agreement of the parties, motion practice, or otherwise, we can reschedule Mr. Van Fleet's deposition for a mutually convenient time and he can testify as to all of the topics for which he is designated" (*Id.* at 4).

The parties thereafter met and conferred regarding Topic 34 on October 17 (Pl.'s Mot. at 4). Baxter asserts, and BD does not dispute, that during this conference, BD "confirmed that its objection regarding an improper attempt to seek further deposition testimony from a prior witness relates to the fact that its designated witness on this topic would be Mr. Van Fleet" (*Id.*).

A few weeks later, on November 8, Baxter asked BD if it "remain[ed] willing to produce Mr. Van Fleet for a second deposition" lasting 4 hours and 43 minutes and limited to the Rule 30(b)(6) topics for which he was designated (Pl.'s Mot. Ex. C at 3). BD responded with the

---

[9] On the same day, but shortly after receiving BD's email, Baxter filed a motion to compel in which it asked us, among other things, to compel BD to provide Mr. Van Fleet's testimony on Topics 28-33 for more than three hours (doc. # 188 at 15). We denied this request at the subsequent October 11 motion hearing because Baxter had failed to develop its argument on the issue (doc. # 196).

following offer, which was "contingent upon Baxter's agreement to its terms in their entirety": (1) BD would make Mr. Van Fleet available to testify for three hours on Topics 28 through 33; (2) Mr. Van Fleet would not be required to answer any questions falling outside of the scope of these topics nor would he have to answer questions within the scope of the topics upon which he had already been deposed (Topics 5 and 17-20); and (3) Baxter would not seek BD's testimony about Topic 34 (*Id.* at 2-3). Baxter rejected this offer; as Baxter saw it, BD was going back on its October 4 offer to produce Mr. Van Fleet "for the remainder of the 7 hours" and, additionally, Baxter did not want to give up the ability to obtain testimony about Topic 34 in exchange for resolving the dispute over the duration of Mr. Van Fleet's deposition (*Id.* at 2). Baxter proceeded to ask BD to confirm that it would make Mr. Van Fleet available for 4 hours and 43 minutes (*Id.*).

The short answer from BD, sent on November 14, was no; the long answer referred to BD's "position that Baxter's service of serial Rule 30(b)(6) notices was improper and prejudicial" and that "[o]nce Baxter began deposing BD's 30(b)(6) designees, it was not free to add new topics as it pleased" (Pl.'s Mot. Ex. C at 1).[10] BD also asserted that when Baxter filed its October 9 motion to compel, "it clearly understood that doing so took" BD's 4 hour and 43 minutes offer "off the table" (*Id.*). As for Topic 34, BD asserted that Baxter was "not entitled to seek either expert testimony or legal contentions under the guise of a fact deposition" (*Id.*). Further communications, which neither party provided to us, did not resolve the dispute (*see* Pl.'s Mot. at 5-6).

---

[10] BD asserted that this "always has been" its position, but we do not see any indication from the meet-and-confer correspondence for this case that BD conveyed this position to Baxter in the context of this litigation before November 14, 2019.

## B.

As an initial matter, we reject Baxter's contention that BD agreed to produce Mr. Van Fleet to testify about Rule 30(b)(6) Topics 28-33 (*see, e.g.*, Pl.'s Mot. at 7; Pl.'s Reply at 11-12). On October 3, BD offered to make Mr. Van Fleet available on October 17 "for a further deposition limited to 3 hours of time and 30(b)(6) Topic Nos. 28-33, with no personal examination beyond the scope of those topics permitted" (Pl.'s Mot. Ex. F at 2-3). But Baxter did not accept this offer; it countered with a proposal whereby there was no "preexisting limit on the duration of [Mr. Van Fleet's] testimony" (*Id.* at 2). *See Lee v. Voyles*, 898 F.2d 76, 78 (7th Cir. 1990) (a "counter-offer rejects the original offer, which expires and may not be 'accepted' later"); *Sementa v. Tylman*, 595 N.E.2d 688, 692 (Ill. App. Ct. 1992) ("Responding to an offer with a counteroffer constitutes a rejection of the original offer"). Baxter's counteroffer was followed by subsequent exchanges between the parties, none of which accepted all the terms of the immediately preceding counteroffer. Thus, the parties never came to a meeting of the minds as to how long and for what topics Mr. Van Fleet would be deposed as a Rule 30(b)(6) witness.

That said, we note that the parties' meet-and-confer conduct did not foster the narrowing of issues for resolution. *See Berner v. Outdoor Env'ts Grp., LLC*, No. 1:09-cv-00685-SEB-JMS, 2010 WL 98706, at *1 (S.D. Ind. Jan. 8, 2010) ("[A] meaningful meet-and-confer narrows and/or eliminates issues that must be briefed—thereby saving everyone time and effort"). When BD offered to produce Mr. Van Fleet "for the remainder of the 7 hours from his initial deposition" to testify about Topics 28-33 (Pl.'s Mot. Ex. F at 1-3), it should have specified the length of this duration. Baxter, in turn, should have immediately asked for BD's understanding of this duration (to see if it was in line with its own) rather than responding with a motion to compel. It was likewise not conducive to compromise for BD to subsequently make an offer regarding Mr. Van Fleet and

22

Topics 28-33 that was conditioned on Baxter's concession regarding another topic (Topic 34) (Pl.'s Mot. Ex. C at 2-3). Although Topic 34 may have been a sticking point for the parties, there were clearly areas where the parties could have come to agreement regarding Topics 28-33. We are disappointed that the parties' negotiating strategies prevented them from doing so.

## C.

BD first argues that Baxter's third amended Rule 30(b)(6) notice, which was the first notice to include the disputed Topics 28-34, "is invalid on its face because Baxter never sought leave to take yet another deposition of BD in this case" (Def.'s Opp'n at 5). Absent a stipulation, a party must obtain leave of court to depose a deponent who "has already been deposed in the case." Fed. R. Civ. P. 30(a)(2)(A)(ii). As we understand BD's argument, because Mr. Van Fleet gave testimony on behalf of BD in July 2019, BD had "already been deposed" when Baxter served its third amended Rule 30(b)(6) notice in September 2019, and thus, the notice was invalid without leave of court. For its part, Baxter contends that it did not seek another deposition of BD by serving the third amended Rule 30(b)(6) notice but merely amended an existing Rule 30(b)(6) notice to add additional topics (Pl.'s Reply at 7).

There is some disagreement among district courts as to whether Rule 30(a)(2)(A)(ii)'s leave requirement applies to Rule 30(b)(6) depositions, *see, e.g.*, *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 234-35 (E.D. Pa. 2008) (citing cases), and neither party points us to any binding precedent deciding the matter. Practically speaking, we note the difficulty in determining when a corporate entity "has been deposed" under Rule 30(a)(2)(A)(ii). Rule 30(b)(6) notices usually include numerous topics, and a party will often designate different witnesses to testify about different subsets of those topics. Depending on witness and lawyer availability (and other issues), these witnesses may be deposed over a span of weeks or months.

That is what happened here: Mr. Van Fleet testified about a subset of Rule 30(b)(6) topics in July 2019, Ms. Lukasavage testified about another subset of topics in September, and two other witnesses testified about two other subsets of topics in October (*see* Pl.'s Reply at 3-4). So is a corporate party deposed when the first designated witness testifies, even when, as here, the first witness only testifies about a handful of the noticed topics? Or is a corporate party deposed only after it has provided witnesses to testify about every noticed topic?

Although an interesting question, we need not decide whether Rule 30(a)(2)(A)(ii)'s leave requirement applies to Rule 30(b)(6) depositions. Even if Rule 30(a)(2)(A)(ii) applies and was violated by Baxter's third amended Rule 30(b)(6) notice, a court must grant a party's request for leave to conduct an additional deposition "to the extent consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 30(a)(2)(A)(ii). In these circumstances, we will treat Baxter's motion to compel as a constructive motion for leave—to the extent one is necessary—rather than deny the motion outright based on the purported invalidity of the third amended Rule 30(b)(6) notice. This allows us to address the merits of the discovery requested, which should be the focus in resolving the parties' dispute. *Cf. Dexia Credit Local v. Rogan*, 231 F.R.D. 538, 549 (N.D. Ill. 2004) ("[O]ur civil litigation system is premised on the concept of full and liberal discovery").[11]

---

[11] In doing so, we note that BD did not object to Baxter's third amended Rule 30(b)(6) notice or move for a protective order based on Baxter's purported violation of Rule 30's leave requirement. Although BD objected to Topics 28-34 as "improper attempt[s] to seek further deposition testimony from a witness that Baxter has already deposed in both his personal and Rule 30(b)(6) capacities" (Pl.'s Mot. Ex. B. at 9-11), this objection does not suggest that a deposition on these topics is improper based on Rule 30 or Baxter's failure to seek leave of court. And despite weeks of back-and-forth correspondence negotiating the production of Mr. Van Fleet for Topics 28-33, BD did not identify the serial nature of Baxter's Rule 30(b)(6) notices as a problem in this litigation until November 14—the day before Baxter filed its motion to compel. True, BD raised this issue earlier in a separate litigation (Def.'s Opp'n at 7 n.2; *id.*, Ex. 9), but if BD wanted to rely upon Rule 30(a)(2)(A)(ii) to resist discovery in *this* litigation, BD should have raised it as an objection to Baxter's third amended Rule 30(b)(6) notice, in a motion for protective order, or as part of the parties' meet-and-confer process. Finally, BD has already offered three corporate witnesses to testify about topics that were added for the first time in the third amended Rule 30(b)(6) notice (Pl.'s Reply at 4). It strikes us as unfair to allow BD to agree to offer testimony on certain Rule 30(b)(6) topics identified in a notice it contends is invalid and then rely upon this purported infirmity to refuse to provide testimony on other topics.

## D.

We begin with Topics 28-33, which BD addresses collectively (Def.'s Opp'n at 7-9). As noted above, these topics seek information about the following subjects:

> 28.  Decisions, and the bases therefor, concerning the pricing for the Accused Products.
>
> 29.  The market for reconstitution devices, including BD's share of that market.
>
> 30.  Marketing/advertising by BD for the Accused Products.
>
> 31.  Business or strategic planning for the Accused Products.
>
> 32.  Estimates, forecasts, or projections of sales, costs, or profits concerning the Accused Products.
>
> 33.  BD's knowledge and awareness of reasons for consumer demand for the Accused Products.

(Pl.'s Mot. Ex. A at 4). Notably, BD does not challenge the relevance of the information sought by these topics (Def.'s Opp'n at 7-9). Instead, BD contends that these topics violate Federal Rule of Civil Procedure 26(b)(2) because they seek (1) "unreasonably cumulative or duplicative" discovery and (2) discovery that Baxter already had "ample opportunity to obtain" (*Id.* at 7) (citing Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii)). We disagree on both counts.

### 1.

BD argues that testimony about Topics 28-33 is cumulative and duplicative because it has already produced documents relating to these topics (Def.'s Opp'n at 7). This argument is a non-starter. As we explained in an earlier opinion, a party "should not be prevented from questioning a live witness in a deposition setting just because the topics proposed are similar to other discovery served" (doc. # 152: 7/26/19 Op., at 13) (internal quotations and citation omitted). To the contrary, a Rule 30(b)(6) "witness may still be useful to testify" about the documents relating to Topics 28-

33, "as well as about any related information that is not apparent from the" documents themselves (*Id.*) (internal quotations and citation omitted).

Relatedly, BD contends that Baxter has already obtained testimony from Mr. Van Fleet about the marketing of PhaSeal, what drives consumer demand, and his role as the business and marketing leader for PhaSeal (Def.'s Opp'n at 7). This contention is also unpersuasive. We have reviewed the testimony cited by BD for this contention, and we find that none of it goes into any substantive depth about the subject matter covered by Topics 28-33 (*see* Def.'s Opp'n at 3, 7) (citing Van Fleet Dep. at 26:21-28:9, 30:2-24, 78:6-81:25, 106:1-107:15). Nor does it appear that BD has offered to designate any of this testimony after the fact as its corporate testimony on Topics 28-33, like it did with Ms. Lukasavage's testimony and Topic 5 (*see* Pl.'s Mot. Ex. C at 5). Although BD's failure to do so certainly is not dispositive, it further indicates that Mr. Van Fleet's testimony did not substantively address the subject matter of Topics 28-33.

BD also asserts that Baxter had ample opportunity during Mr. Van Fleet's deposition to ask him questions pertaining to Topics 28-33 (Def.'s Opp'n at 8). We disagree. The topics for which Mr. Van Fleet was designated as BD's corporate representative—BD's knowledge or awareness of the patents-in-suit, instruction and other material provided to users of the accused products, and warranties covering the accused products (Def.'s Opp'n Ex. 4 at 2-3; Def.'s Opp'n Ex. 6 at 2)—have little, if any, overlap with Topics 28-33. Thus, any testimony by Mr. Van Fleet about the subject matter of Topics 28-33 would have been outside the scope of the Rule 30(b)(6) topics for which he was designated.[12] Such testimony is not the testimony of the corporation but

---

[12] We note that BD's counsel made several objections during Mr. Van Fleet's deposition based on the scope of the designated Rule 30(b)(6) topics (*see, e.g.,* Van Fleet Dep. at 23:12-23, 24:11-13, 31:8, 31:17-21, 40:10-12, 41:5, 45:15-17, 48:17, 60:23, 61:3, 62:9-10, 63:18, 90:1, 92:21-22).

of the individual. *See, e.g., McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 241 F. Supp. 3d 737, 752 (N.D. Tex. 2017) (explaining that "questions and answers exceeding the scope of the 30(b)(6) notice . . . are merely treated as the answers of the individual deponent") (internal quotations and citations omitted). Yet "Baxter is entitled to obtain *BD's corporate testimony* about relevant topics, even if it has already obtained similar or related testimony from" an individual (7/26/19 Op. at 13) (emphasis added). Accordingly, even if Mr. Van Fleet had substantively testified about the issues encompassed by Topics 28-33, this testimony would have been in his individual capacity and would not preclude Baxter from obtaining BD's corporate testimony on those same issues.

## 2.

Lastly, BD protests that Baxter did not identify Topics 28-33 as subjects for deposition until the end of discovery (Def.'s Opp'n at 8). But Baxter did not wait until the last day or week of discovery to identify these topics; Baxter identified Topics 28-33 on September 4, a little more than a month before the initial close of fact discovery (4/9/19 Order at 2; Pl.'s Mot. Ex. A). Although this did not leave a generous amount of time for the parties to schedule and conduct deposition(s) before the October 9 deadline, the notice did not come so late in the day as to warrant denying Baxter the discovery at issue. We note that for other topics that were identified for the first time in the third amended Rule 30(b)(6) notice, the parties were able to schedule the depositions of two other witnesses (Ms. Lukasavage and Aasim Javed) before the discovery cut-off, and the parties scheduled the deposition of another witness (George Goldman) by agreement after the cut-off (*see* Pl.'s Reply at 4). If BD was able to make these witnesses available for deposition on topics first identified in the third amended Rule 30(b)(6) notice, it could have done the same for Topics 28-33.

**E.**

That leaves Topic 34, which seeks BD's testimony about "[a]cceptable noninfringing alternatives to the Accused Products" (Pl.'s Mot. Ex. A at 4). BD does not assert that Topic 34 seeks irrelevant information, but it contends that this topic is improper for two primary reasons: (1) "it improperly seeks testimony on legal contentions that are the subject of expert testimony"; and (2) "Baxter already deposed the witness who would have testified about" any facts underlying the legal topic (Def.'s Opp'n at 10). We address each reason (and BD's related arguments) below.

**1.**

BD first contends that its "position on whether products are 'acceptable noninfringing alternatives to the Accused Products'" is a legal contention that is the subject of expert discovery (Def.'s Opp'n at 10-11). BD then proceeds to argue that to the extent Topic 34 seeks non-objectionable, non-expert contentions, contention interrogatories are the proper vehicle to obtain this information (*Id.* at 11-12). Finally (at least with respect to this cluster of arguments), BD points to the fact that it has already responded to interrogatories regarding non-infringing alternatives and claims that requiring the disclosure of any further information on the topic would improperly intrude on its attorney-client privilege and work product (*Id.* at 12). We are not persuaded by any of these arguments.

*First*, although some district courts have determined that a Rule 30(b)(6) deposition should not be used to obtain a party's legal position on an issue (*see* Def.'s Opp'n at 10-11) (citing cases), we respectfully disagree with these non-binding cases to the extent they would preclude any questioning about Topic 34. *See also Canal Barge Co. v. Commonwealth Edison Co.*, No. 98 C 0509, 2001 WL 817853, at *2 (N.D. Ill. July 19, 2001) ("Generally, inquiry regarding a corporation's legal positions is appropriate in a Rule 30(b)(6) deposition"). The identities of the

products that BD asserts are acceptable non-infringing alternatives is not privileged information, and BD would be required to respond to an interrogatory seeking that information. We see no reason why it is improper for BD to prepare a witness to give the same information at a deposition. *Cf. Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 29, 34 (D. Conn. 2003) ("As courts have held contention interrogatories seeking the factual bases for allegations would not encroach on protected information, it is not apparent how the same information would be otherwise unavailable through questions posed to a deponent in the course of a deposition") (internal citation omitted).

Nor does Topic 34, by referring to a "noninfringing" product, necessarily require expert testimony. As just one example, if BD non-attorney employees, independent of this litigation, analyzed products in the market and concluded that they do not infringe Baxter's patents based on their own experience and reading of the patent claims (as opposed to advice from attorneys), that would be non-expert, factual information discoverable through deposition testimony. Of course, we do not know whether such a scenario actually took place—we merely pose this hypothetical to show that not all testimony related to patent non-infringement is exclusively within the realm of expert testimony.

Indeed, we can contemplate many lines of questioning encompassed by Topic 34 that neither ask for legal contentions nor expert testimony. For instance, once the universe of products claimed by BD to be acceptable non-infringing alternatives is established, Baxter could ask BD whether a particular product competes with the accused products, which is the type of question that BD itself asserts "is squarely a fact question" (Def.'s Opp'n at 12 n.4). Or Baxter could inquire about consumer demand for those products, or the advantages of those products over the accused products. Baxter could also ask BD's witness about differences between the accused products and

third-party products without any comparison or reference to Baxter's patents. These examples are not exhaustive, and there may be more lines of relevant factual questioning within the scope of Topic 34 that Baxter wishes to ask; the point is that Baxter should have the opportunity to do so.

*Second*, nothing about the information sought by Topic 34 convinces us that Baxter must use contention interrogatories as the exclusive means to obtain this information. *See Canal Barge Co.*, 2001 WL 817853, at *2 ("Whether a Rule 30(b)(6) deposition or a Rule 33(c) contention interrogatory is more appropriate will be a case by case factual determination"). "Parties to litigation do not have to accept their opponent's statement that all relevant evidence has been produced via a given discovery vehicle—they are entitled to test this assertion in questioning witnesses during depositions." *Milwaukee Elec. Tool Corp. v. Chervon N. Am., Inc.*, No. 14-CV-1289-JPS, 2015 WL 4393896, at *5 (E.D. Wis. July 16, 2015). In fact, there is a reason parties are permitted "to depose one another and their witnesses during the discovery process": interrogatory responses, along with other written statements, "are typically drafted by lawyers and by their nature are self-serving." *Reynolds v. Jamison*, 488 F.3d 756, 769 (7th Cir. 2007) (Rovner, J., concurring in part and dissenting in part). Nor do interrogatories permit the development and testing of factual information that can be achieved through the iterative question-and-answer process. BD has not offered any principled basis to force Baxter to accept written interrogatory responses in lieu of deposition testimony.

*Third*, Baxter is not precluded from obtaining BD's deposition testimony about Topic 34 merely because BD has responded to interrogatories (Baxter's Interrogatories 18 and 19) that relate to non-infringing alternatives. For one thing, nothing prevents Baxter from seeking the same or related information from both deposition testimony and interrogatories. *See Sec. Ins. Co.*, 218 F.R.D. at 34 ("[N]othing precludes a deposition . . . in conjunction with [contention]

30

interrogatories"); 7/26/19 Op. at 13 ("A party should not be prevented from questioning a live witness in a deposition setting just because the topics proposed are similar to other discovery served—to do so would essentially limit a party to the first form of discovery served") (internal quotations and alterations omitted). More substantively, though, Topic 34 addresses any acceptable non-infringing alternative to the accused products (*see* Pl.'s Mot. Ex. A at 4), whereas Baxter's Interrogatories 18 and 19 only seek information about non-infringing alternatives that BD implemented or could have implemented (Pl.'s Opp'n at 6-7; Pl.'s Mot. Ex. D at 3-4). Because the breadth of the information sought by the interrogatories at issue is narrower than the breadth of the information sought by the Rule 30(b)(6) topic, BD's interrogatory responses may not fully disclose the entirety of BD's position regarding Topic 34. That this may be the case is illustrated by the fact that BD's briefing on its motion to compel identifies, as purportedly acceptable non-infringing alternatives, nine third-party products that it did not identify in its responses to Interrogatories 18 and 19 (*compare, e.g.*, Def.'s Mem. at 11-14, *with* Pl.'s Mot. Ex. D at 3-5). To be clear, we are not judging the adequacy of BD's responses to the interrogatories posed; rather, we highlight this to show that these responses are not an adequate substitute for BD's corporate testimony on Topic 34.

*Fourth*, BD argues that revealing any additional information about non-infringing alternatives not already contained in its interrogatory responses "would improperly delve into work-product or privilege" (Def.'s Opp'n at 12). We already rejected a similar attempt by BD to preemptively prohibit deposition testimony based on a claimed concern about privilege (7/26/19 Op. at 13-16), and we do so again here. If any question asked during the deposition ventures into what BD claims in good faith is privileged territory, BD's counsel is free to object to the particular

question at issue, state the asserted privilege, and instruct the witness not to answer on the basis of that privilege (*see id.* at 15).

## 2.

BD also argues that Baxter already deposed the witness who would have testified about the subject matter of Topic 34, Mr. Van Fleet, and that Baxter could have asked questions about Topic 34 at that deposition (Def.'s Opp'n at 12-13). This argument fails for the same reason that BD's similar argument with respect to Topics 28-33 fails. The issue of acceptable non-infringing alternatives does not fall within the scope of any of the topics for which Mr. Van Fleet was previously designated as BD's corporate representative, so any testimony obtained from Mr. Van Fleet about the subject matter of Topic 34 would have been his individual testimony, not BD's corporate testimony. *See, e.g., McKinney/Pearl Rest. Partners*, 241 F. Supp. 3d at 752. Mr. Van Fleet's prior deposition does not affect Baxter's entitlement to obtain testimony from BD about Topic 34.

## F.

In summary, Topics 28-34 of Baxter's third amended Rule 30(b)(6) notice seek relevant information in compliance with Federal Rule of Civil Procedure 26(b)(1) and (2), and Baxter is entitled to BD's corporate testimony about this information. Accordingly, we order BD to designate and make available a witness or witnesses to provide testimony concerning Rule 30(b)(6) Topics 28-34 at a mutually-agreeable time and place, but no later than 35 days after the date of this opinion. In conducting this deposition, Baxter may not ask any questions outside of the Rule 30(b)(6) topics for which the witness is designated. Moreover, this deposition is subject to the parties' agreement to limit each side to one 14-hour Rule 30(b)(6) deposition (*see* doc. # 40 at 2) except the deposition on Topics 28-34 also may not exceed 3.5 hours. Given BD's offer to make

Mr. Van Fleet available to testify about the same topics (except Topic 34) for three hours, and the amount of time Baxter has used to depose other witnesses about fewer topics, the 3.5 hour limit both gives Baxter adequate time to address the seven Rule 30(b)(6) topics at issue and protects BD against undue burden.

## CONCLUSION

For the foregoing reasons, and subject to the limitations set forth in this opinion, we grant (1) defendant BD's motion to compel discovery (doc. # 210) and (2) plaintiff Baxter's motion to compel discovery (docs. ## 217, 218). We set the matter for a status hearing on March 4, 2020 at 9:00 a.m.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATE: January 27, 2020**